928 So.2d 140 (2005)
Linda MAY
v.
HARRIS MANAGEMENT CORPORATION.
No. 2004 CA 2657.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
*143 Sanettria R. Glasper, Kenneth F. Sills, Baton Rouge, for Plaintiff-Appellant, Linda May.
Gregory K. Moroux, Lafayette, for Defendant-Appellee, Harris Management Corporation.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
CARTER, C.J.
Linda May brought this action against Harris Management Corporation (HMC) seeking damages for detrimental reliance arising out of the withdrawal of an offer of at-will employment. The trial court granted summary judgment in favor of HMC, and May appeals. For the following reasons, we affirm.

FACTS
HMC owns, operates, and manages nursing homes in the Baton Rouge area. On March 19, 1998, Melvin Harris, on behalf of HMC, orally offered Linda May a position as the nursing home administrator for one of the HMC nursing homes, Concord Manor. At the time of the job offer, May was employed in the same position at Zachary Manor, another nursing home not owned or operated by HMC, earning a base salary of approximately $44,000. After negotiating a base salary of $52,000 with no specific duration of employment for the HMC job, May accepted the offer of employment on March 24, 1998. Additionally, May requested that April 27, 1998 be her start date at Concord Manor. She informed Harris that she needed the one-month delay so that she could give a two-week notice of her resignation at Zachary Manor and enjoy two weeks of accrued vacation time before beginning her new job at Concord Manor. It is undisputed that there was no written employment contract and the oral offer of employment was for an indefinite term, although May personally perceived and assumed that the HMC job was permanent.
After accepting HMC's offer of employment, May gave notice and concluded her work at Zachary Manor on April 3, 1998. On the same date, she completed various employment documents while visiting at Concord Manor. During the interim period before May was to actually begin working at Concord Manor, she visited the nursing home facility several times in order to ease her transition into the administrator position. It was during these visits that some employees at Concord Manor began to report to Harris that May's imminent employment with HMC was problematic. It became apparent that May envisioned changes in the facility's furnishings and the treatment of certain patients that were incompatible with HMC plans. On April 22, 1998, five days prior to her agreed-upon start date, Harris informed May that based upon uneasiness, apparent differences in management styles, and incompatible philosophies, HMC was withdrawing the offer of employment. At this point, May could not return to her prior employment at Zachary Manor because the position had already been filled. She immediately searched for and secured replacement employment in the same position at yet another nursing home, earning a base salary of $48,000, beginning May 25, 1998, approximately one month after HMC withdrew the employment offer.
May filed suit against HMC on July 30, 1998, seeking damages for detrimental reliance, maintaining that she had resigned from her previous employment relying on HMC's promise of employment which was later withdrawn. After several years of prolonged discovery, May filed a motion for partial summary judgment on the issue of HMC's liability under the theory of *144 detrimental reliance. HMC filed a cross-motion for summary judgment, seeking a declaration by the trial court that an at-will employee can be terminated at any time, including the period preceding her employment. Alternatively, HMC argued that May could not satisfy the damage requirements of the theory of detrimental reliance because she immediately took a job at a greater salary than she enjoyed at her previous position.
After a hearing on May 10, 2004, the trial court ruled in favor of HMC, granting summary judgment, and dismissing May's claims against HMC. In its oral reasons for judgment, the trial court concluded "the at-will employment rule is so strong in Louisiana that it would override the cause of action of detrimental reliance. While I think clearly the criteria of detrimental reliance were met in this case[,] I think the right of the employer to terminate the employment at will trumps that detrimental reliance [cause] of action." It is from this judgment that May appeals, contending the trial court erred and she is entitled to recover under the doctrine of detrimental reliance because she met her burden of proof for all elements of the doctrine.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Weller v. Brown, 01-0314 (La.App. 1 Cir. 3/28/02), 813 So.2d 635, 638. A motion for summary judgment shall be granted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. In this case, there are no material factual disputes; there are only questions of law. In reviewing legal issues, an appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. Weller, 813 So.2d at 638.

ANALYSIS
In this case, we must decide a res nova legal issue in Louisiana: whether recovery is allowed under the doctrine of detrimental reliance when an employer withdraws an offer of at-will employment prior to the designated time for the employee to begin work. This requires us to examine the relationship of two separate and distinct doctrines found in Louisiana law and jurisprudence: the detrimental reliance doctrine versus the at-will employment doctrine.
The theory of detrimental reliance, also referred to in the jurisprudence as promissory or equitable estoppel, is codified at LSA-C.C. art. 1967, and provides in pertinent part:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.
The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Suire v. Lafayette City-Parish Consol. Government, 04-1459 (La.4/12/05), 907 So.2d 37, 58-59. To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Id. at 59. The basis of detrimental reliance is "the idea that a *145 person should not harm another person by making promises that he will not keep." Id.
It is difficult to recover under the theory of detrimental reliance, because estoppel is not favored in our law. Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975); Barnett v. Bd. of Trustees for State Colleges & Universities, 00-1041 (La.App. 1 Cir.6/22/01), 809 So.2d 184, 189. All estoppel claims must be examined carefully and strictly. Kibbe v. Lege, 604 So.2d 1366, 1370 (La.App. 3 Cir.), writ denied, 606 So.2d 540, 541 (La.1992). In this case, the questions to be answered are: (1) Did HMC make a representation or promise to May on which she relied? (2) Was May's reliance justifiable or reasonable? (3) Did this reliance work to May's detriment? We must separately analyze each element of May's claim.

"Reliance on a Promise" Element
The first element of May's detrimental reliance claim is easily met. It is undisputed that on March 19, 1998, HMC made an oral offer of at-will employment to May. The fact that there was no written employment contract does not diminish the validity of the promise of employment. The promise need not be expressed formally. See Suire, 907 So.2d at 59. May accepted the offer on March 24, 1998, with the condition that the employment was to begin on April 27, 1998. Additionally, the evidence supports May's assertion that she relied on HMC's promise of employment when she voluntarily gave notice of resignation to her previous employer after accepting HMC's offer. The record reflects that May continued to rely on the promise of employment when she fulfilled her two-week notice commitment to her previous employer on April 3, 1998, and proceeded to complete the employment documents for the HMC job. May further showed her reliance on the offer of employment by visiting the HMC facility several times prior to the date she was set to begin work.

"Reasonableness of the Reliance" Element
The second element, dealing with the reasonableness of May's reliance on HMC's promise, is the key issue in this case, and unfortunately its resolution is not as clear. We must first examine the principles of the at-will employment doctrine when considering the reasonableness of May's reliance.
At-will employment has a strong presence in Louisiana law and jurisprudence. The employer-employee relationship is contractual. As such, the terms of the employment contract may be negotiated and agreed upon as long as not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment at-will. Quebedeaux v. Dow Chemical Co., 01-2297 (La.6/21/02), 820 So.2d 542, 545. The principle is codified at LSA-C.C. art. 2747, which states: "A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." Generally, under LSA-C.C. art. 2747, an employer is free to dismiss an employee at any time for any reason without incurring liability for the discharge.[1]Brodhead v. Bd. of Trustees for State Colleges and Universities, 588 *146 So.2d 748, 752 (La.App. 1 Cir.1991), writ denied, 590 So.2d 597 (La.1992).
When the employment contract is for an indefinite term, the contract is terminable at the will of either party. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1103 (La.1988); Hughes v. Muckelroy, 97-0618 (La.App. 1 Cir. 9/23/97), 700 So.2d 995, 998-99.[2] Any contract for permanent employment is void as against public policy and is unenforceable in Louisiana. Such a contract must be read as having an indefinite term, and is therefore, terminable at will by either party. Pitcher v. United Oil & Gas Syndicate, 174 La. 66, 139 So. 760, 761 (1932); Romaguera v. Prudential Ins. Co. of America, 95-3006, 1995 WL 747464, p. *2 (E.D.La.1995). The only exception to this rule is when the contract for permanent employment is supported by some special consideration given by the employee over and above the rendering of services. Pitcher, 139 So. at 761; Simmons v. Westinghouse Electric Corp., 311 So.2d 28, 31 (La.App. 2 Cir.1975).
With these principles in mind, we consider the issue of whether it was reasonable for May to leave her previous, allegedly stable, employment in reliance on HMC's promise of at-will employment at a job where she could be terminated at any time for any reason. We note that May did not offer any evidence that she was giving special consideration over and above the rendering of her services. May relinquished her previous employment in order to accept the position she sought with HMC. Her resignation was a customary and necessary incident of changing jobs. Nothing in the record suggests that HMC bargained for that benefit or that May provided additional consideration. Presumably, the driving force behind May's acceptance of the HMC offer was the substantial increase in salary. The Louisiana Supreme Court has held that leaving a civil service position to take a higher paying position was not "consideration," even when the employee expressed concern about the stability of the employment. Brannan, 526 So.2d at 1104.
The reasonableness question has been examined in Louisiana only in the context of a termination after the employee began working for the employer. In the sparse jurisprudence involving detrimental reliance claims of employees terminated after working a short time in an at-will employment situation, the Louisiana cases have held it to be patently unreasonable as a matter of law to have relied on the at-will employment. See Robinson v. Healthworks International, L.L.C., 36,802 (La. App. 2 Cir. 1/29/03), 837 So.2d 714, 722, writ not considered, 03-0965 (La.5/16/03), 843 So.2d 1120 (reasons for an at-will employment contract encompassed the parties' mutual understanding that the employee would no longer work at her former business/job, but would change her position and become employed for wages with the employer; thus, no detrimental reliance); Stevenson v. Lavalco, Inc., 28,020 (La.App. 2 Cir. 2/28/96), 669 So.2d 608, 612, writ denied, 96-0828 (La.5/17/96), 673 So.2d 611 (at-will employee who relocated his family from Connecticut to Louisiana, incurring numerous expenses, should have understood the inherent risks in accepting employment without securing protection for himself through an employment contract with specific terms); Romaguera, 1995 WL 747464 at *2 (at-will employee *147 who reluctantly gave up stable position for higher position with more responsibility and pay was patently unreasonable to assume that he had a valid contract for a permanent position). See also Griffith v. Sollay Foundation Drilling, Inc., 373 So.2d 979, 982 (La.App. 3 Cir.1979) (an employee can be discharged at will even though he moved his family from Georgia to Louisiana based upon representations that his employment would be long-term); Hughes, 700 So.2d at 1001-02 (an employee's resignation from his previous position and relocation to a different city was not shown to be a change in position to the employee's detriment even though the employee was arguably led to believe that he would be eligible for a specific-term employment contract following a probationary period).
The underlying theme for these holdings is that the employees have a misplaced reliance in this situation. In other words, the courts have found it unreasonable to rely on at-will employment and to assume that the employment contract is valid and enforceable when a contract for permanent employment is legally unenforceable. See Kibbe, 604 So.2d at 1371 (unreasonable to rely on an oral promise that was legally unenforceable). Other jurisdictions, considering similar facts, have reached the same result. Albert v. Davenport Osteopathic Hospital, 385 N.W.2d 237, 238-40 (Iowa 1986) (leaving a collective bargaining unit to accept a new position in management was not sufficient consideration to support a contract for permanent employment); Milligan v. Union Corp., 87 Mich. App. 179, 274 N.W.2d 10, 12 (1978) (passing up other employment opportunities was not sufficient consideration to support a contract for permanent employment); Ohio Table Pad Co. of Indiana, Inc. v. Hogan, 424 N.E.2d 144, 146 (Ind.App. 3 Dist.1981) (moving one's household to a new location and relinquishing an existing job, business, or profession was not sufficient consideration to support a contract for permanent employment).
As for the cases involving at-will employment offers being withdrawn before the employee actually begins work, we must look outside of Louisiana to cases with similar facts. Our research reveals that the jurisprudence around the country is split on the issue of reasonableness.
Several state and federal court decisions have held that the employee was reasonable to rely on the separate promise of at-will employment, and have allowed recovery under an equitable estoppel or detrimental reliance theory. See Goff-Hamel v. Obstetricians & Gynecologists, P.C., 256 Neb. 19, 588 N.W.2d 798, 804 (1999) (promissory estoppel can be asserted in connection with the offer of at-will employment); Humphreys v. Bellaire Corp., 966 F.2d 1037, 1042 (6th Cir.(Ohio) 1992) (reliance on a promise of permanent employment might be considered reasonable); Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1270 (9th Cir.(Cal.) 1990) (the employer breached a promise to employ, which is separate from the employment contract itself; therefore, whether the ultimate employment is at-will is immaterial to the analysis of whether the contract was breached before employment began); Grouse v. Group Health Plan, Inc., 306 N.W.2d 114, 116 (Minn.1981) (the employee had a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of the employer once he was on the job).
Numerous other decisions have reached a contrary result, i.e., that it is patently unreasonable to rely on an offer of at-will employment. These cases reason that because the offer was for employment for an indefinite period of time, the employees were at-will, subject to termination at any *148 time for any reason. It follows that the employers had the right to withdraw the offer of employment prior to the time the employees were to begin work. See White v. Roche Biomedical Laboratories, Inc., 807 F.Supp. 1212, 1216-17 (D.S.C. 1992) (employee's alleged independent consideration of relying on the employment offer by resigning prior employment, was insufficient to alter the otherwise at-will employment contract); Payne v. FMC Corporation, 90-882-6, 1991 WL 352415, p. *4 (D.S.C.1991) (a contrary holding would require the employer to allow the prospective employee to work some insignificant amount of time before the employer could then exercise its right to terminate the employment relationship); Sartin v. Mazur, 237 Va. 82, 375 S.E.2d 741, 743 (1989) (the doctrine of free terminability draws no distinction between the offer of employment and the actual act of employment); Jaffe-Spindler Co. v. Genesco, Inc., 747 F.2d 253, 258 (4th Cir.(S.C.) 1984) (courts should not require the performance of acts when the doing of them will not further any worthwhile purpose).
After carefully reviewing these and other authorities, we conclude that the better view on this issue is that it is patently unreasonable for an employee to rely on an offer of at-will employment. We acknowledge the apparent harshness of this ruling, which results in an employee who resigns one job for other at-will employment, does so at her peril. To some degree this is inherent in the concept of at-will employment. Further, to hold otherwise would undermine the at-will employment doctrine in this state. If the employee were permitted to recover in this situation, it would inevitably result in employers actually waiting until the employee starts work before terminating them, even though the employer had made a decision to withdraw the offer of employment before the employee began work. By doing so, the employer would ensure that no liability attaches for termination of the at-will employee since Louisiana jurisprudence has expressly denied recovery in that situation.
Why should an at-will employee have greater rights before she actually begins employment than afterwards? We conclude that she should not. There should not be a different standard before and after the date that an at-will employee begins work. It would be an anomalous result if employers who had already decided to terminate an employee could avoid liability simply by waiting for the actual employment to begin, whereas if they withdraw an offer of employment before the prospective employee starts working, they are faced with liability for detrimental reliance claims. The law should not be interpreted in a way that results in absurdities or futile acts. See LSA-C.C. art. 9; O'Brien v. Shepley, 451 So.2d 82, 84 (La.App. 5 Cir.1984). For this reason, we decline to make a distinction between the time period before and after at-will employment begins in terms of the reasonableness of an employee's reliance on the at-will employment.
We hold that it is unreasonable as a matter of law to rely on an offer of at-will employment, just as it is patently unreasonable to rely on the permanency of at-will employment once it begins. The general rule that employment contracts are terminable at will unless a specified duration is stated, applies to both post-acceptance (or pre-performance) and post-performance phases of the at-will employment contract. See Slate v. Saxon, Marquoit, Bertoni, & Todd, 166 Or.App. 1, 999 P.2d 1152, 1154 (2000), review denied, 330 Or. 375, 6 P.3d 1105 (2000) (even if the two phases are viewed as two separate contracts, the parties did not specify a duration *149 other than at-will in connection with either phase). Thus, in the case sub judice, May is not able to meet the second element of her detrimental reliance claim.

"Detriment or Damages" Element
We also find that in this particular case, May is unable to meet the burden of proof for the third element of her detrimental reliance claim. At the time that HMC's offer of at-will employment was revoked, May was enjoying a two-week accrued vacation earned while working for her previous employer. Thus, she had no lost wages before the actual start-date for the HMC job. May did not have any relocation expenses, she did not prove damages for emotional distress, and she was able to find replacement employment that began approximately one month after HMC withdrew the offer of employment, earning a higher salary than she enjoyed at her previous job.
Of course, May would argue that she should be entitled to one-month's salary because of her one month of unemployment after HMC withdrew the offer of employment.[3] However, the reality is that HMC could have terminated May the day she was to begin her employment on April 27, 1998, leaving her with no recourse against HMC for detrimental reliance under the previously outlined Louisiana jurisprudence. Therefore, even if we had ruled the opposite way in this opinion (i.e., finding that her reliance on the offer of at-will employment was reasonable), May still would have been unable to meet the elements of her detrimental reliance claim because she could not prove damages. Under the at-will employment doctrine, HMC would not have been responsible for any of May's damages after the date that she was to start work.

CONCLUSION
We conclude that May's reliance on HMC's offer of at-will employment was unreasonable as a matter of law and therefore, May will not be able to prove all of the elements of her claim for detrimental reliance, including damages. Thus, HMC is entitled to summary judgment as a matter of law. See LSA-C.C.P. art. 966 B. We hereby affirm the trial court's grant of summary judgment in favor of HMC, dismissing May's claim. We emphasize that our affirmance is of the trial court's judgment, not the stated oral reasons, as appeals are not taken from reasons.[4]See Veal v. American Maintenance & Repair, Inc., 04-1785 (La.App. 1 Cir.9/23/05), 923 So.2d 668, 672-73. All costs of this appeal are to be paid by plaintiff-appellant, Linda May.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.
GAIDRY, J., dissents with reasons.
GAIDRY, J., dissenting.
I agree with all points raised by my learned concurring colleague save one: I conclude that Ms. May established an adequate prima facie case of a detriment suffered by reason of her justifiable reliance *150 on HMC's offer. I find no manifest error in the trial court's factual finding that all three elements of the doctrine of detrimental reliance were established, but conclude that the trial court committed legal error in applying the at-will employment principle of La. C.C. art. 2747 to a prospective employee. In my view, such a conclusion is an unwarranted extension of the at-will employment principle to a classic factual scenario of detrimental reliance governed by La. C.C. art. 1967.
The majority opinion indulges in a misplaced discussion of the principles of employment for indefinite and permanent terms, when its focus should be confined to determining whether La. C.C. art. 1967's requirements apply to a promise of future employment inducing detriment to a prospective employee. The majority suggests that it would have been necessary for HMC to have "bargained" for the "benefit" of Ms. May's resignation from her previous employment in order to establish "consideration" sufficient for prospective employment not subject to the at-will employment doctrine. But Ms. May was never afforded employee status with HMC, so the doctrine simply cannot apply here. And La. C.C. art. 1967 does not define "cause" in terms of "consideration," in terms of obtaining something in return for binding oneself. La. C.C. art. 1967, Comment (c).
The undisputed evidence in the record shows that in reliance on HMC's promise of employment, Ms. May left a stable position with another employer, used accrued vacation time which she might have used at another time, and was left unemployed for several weeks. While her damages might not be relatively substantial, she did apparently sustain some loss.[1] Would the result be different and anomalous if HMC had terminated Ms. May's employment the day after she started, with no consequent liability? It certainly might appear so, but the line must be drawn somewhere. See Bower v. AT & T Technologies, Inc., 852 F.2d 361, 363-65 (8th Cir.1988) and Peck v. Imedia, Inc., 293 N.J.Super. 151, 165-68, 679 A.2d 745, 752-53 (App.1996). Our law is not perfect, but courts should nevertheless strive to achieve justice within its imperfect parameters. The fact remains that Ms. May was never afforded the promised opportunity of beginning employment with HMC, and reasonably relied upon a firm promise of employment before leaving the security of ongoing employment and surrendering personal advantages. At the very least, genuine issue of material fact existed as to whether such changes constituted detriment under the doctrine of detrimental reliance. The trial court evidently concluded they did, and I agree. I respectfully dissent.
DOWNING, J., concurs and assigns reasons.
I concur with the result because Linda May has failed to prove detriment as a result of her justifiable reliance on Harris Management Corporation's (HMC's) promise of employment. I fully agree with the trial court insofar as it found Ms. May justifiably relied on HMC's promise of employment. It seems to me patently absurd that we could find it patently unreasonable for an employee to rely on an offer of at-will employment when the employee cannot accept the offer without leaving secure employment and incurring expenses. Common sense and experience demonstrate that people seeking new employment for whatever reason know that risk is *151 involved in the employment, but not in the acceptance of the employment. Perhaps all prospective employers and employees should engage counsel, negotiate terms and reduce them to writing, but to make such action necessary seems patently excessive.
I agree with the line of cases cited by the majority that distinguishes between a contract to hire and actual employment. And while the "at-will" doctrine precludes damages for actual lost employment, the "at-will" doctrine does not apply to a party who is not yet an employee. A prospective employee should be able to collect damages for costs of moving and other provable damages as a result of a breach of promise on which a normally reasonable person would rely.
When we say that it is unreasonable as a matter of law for an employee to rely on a promise of employment, we say that it is reasonable for employees to expect employers to breach their promises and act in reckless disregard of the prospective employees' welfare. I believe the contrary: that employers generally act honorably and in good faith. I therefore believe that it is highly reasonable to rely on an employer's promise of employment. And pre-employment damages are not precluded by the "at-will" doctrine.
Here, Ms. May reasonably relied on HMC's promise of employment. But, as the majority properly points out, she failed to prove that she suffered any detriment. Rather, she is now employed at a higher rate of pay than she was previously, and she has failed to establish other damages.
NOTES
[1] The right to dismiss an employee is tempered by numerous federal and state laws that prohibit certain reasons for dismissal of an at-will employee. Quebedeaux, 820 So.2d at 545. However, none of the statutory exceptions are applicable in this case.
[2] It is well settled that a set rate of pay based on a yearly period does not imply an intent to contract for a specified time. See Griffith v. Sollay Foundation Drilling, Inc., 373 So.2d 979, 982 (La.App. 3 Cir.1979); Weaver v. Purple Shield Life Ins. Co., 356 So.2d 519, 521 (La.App. 1 Cir.1977).
[3] In those cases where detrimental reliance damages have been allowed in this context, the awards have been based upon wages from the prior employment and other damages incurred in reliance on the job offer, not based on wages lost from the prospective at-will employment. See Goff-Hamel, 588 N.W.2d at 802.
[4] We disagree with the trial court's statement that "the criteria of detrimental reliance were met in this case." However, we agree with the ultimate outcome: summary judgment in favor of HMC was correct.
[1] Since the relief to which Ms. May is entitled under La. C.C. art. 1967 includes "damages" for the detriment sustained, HMC should not in effect be given a credit for her use of her earned vacation time, a fringe benefit received from a collateral source.