926 So.2d 20 (2006)
N-Y ASSOCIATES, INC.
v.
BOARD OF COMMISSIONERS OF the ORLEANS PARISH LEVEE DISTRICT.
N-Y Associates, Inc.
v.
Board of Commissioners of the Orleans Levee District.
Nos. 2004-CA-1598, 2004-CA-1986.
Court of Appeal of Louisiana, Fourth Circuit.
February 22, 2006.
*21 Kyle Schonekas, Maria Garcia Marks, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Gerard G. Metzger, Gerard G. Metzger, APLC, and Frank A. Milanese, Frank A. Milanese, PLC, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY, Judge LEON A. CANNIZZARO JR.).
MICHAEL E. KIRBY, Judge.
In this breach of contract case, the Board of Commissioners of the Orleans Levee District ("Board") appeals the trial court judgment in favor of plaintiff, N-Y Associates, Inc., in the amount of $521,279.00 plus interest, costs and attorney fees. N-Y Associates answered the appeal, requesting an award of additional attorney fees and costs incurred in the post-trial and appellate proceedings.
Prior to addressing the merits of this appeal, we will consider the Board's motion to dismiss the plaintiff's answer to appeal. This motion argues that the answer is untimely. We disagree. This is a consolidated case with two judgments, one appealed under the number 2004-CA-1598 (awarding damages for breach of contract) and the other under 2004-CA-1986 (relating to attorney fees and costs.) The Board's motion to dismiss refers to 2004-CA-1598, but the plaintiff only filed an answer to the appeal in 2004-CA-1986.
La. C.C.P. article 2133 states that an answer to an appeal must be filed no later than fifteen days after the return day or the lodging of the record whichever is later. The record in 2004-CA-1986 was lodged on November 18, 2004, and the *22 answer was filed on November 23, 2004. Under La. C.C.P. article 2133, the answer is timely.
On June 16, 1994, plaintiff and the Board entered into a contract that called for plaintiff to perform certain professional engineering services related to the repair of a retaining wall at the Lakefront Airport in New Orleans. The contract stated that the retaining wall project would involve three phases: the study phase (Phase I), the design phase (Phase II), and the construction phase (Phase III). The contract specified the amount of compensation for the study phase, and further stated that compensation for the design and construction phases would be covered in a supplemental agreement to the contract. Each party to the contract had the right to terminate the contract after providing the other party with thirty days notice in writing, and after the Board paid the plaintiff for completed work.
The contract also stated that the project was subject to funding by the Federal Aviation Administration ("FAA"). On July 19, 1995, the Board passed a resolution regarding its goal of obtaining FAA funding for the rebuilding of the retaining wall. The Board authorized the issuance of a Request for Qualifications ("RFQ") for solicitation of engineering firms to prepare plans and specifications in accordance with an FAA Advisory Circular. By letter dated July 28, 1995, the Chief Engineer for the Board, Mr. Stevan G. Spencer, notified plaintiff's President, Mr. Frank Nicoladis, that the Board was terminating the June 16, 1994 engineering agreement pursuant to the termination clause in the contract. In the letter, Mr. Spencer noted that the study phase of the project was 98.03% complete, and that the remaining percentage owed to plaintiff would be released upon receipt of the final study report.
Plaintiff claims in its petition that it was informed that the RFQ advertisement was necessary in order to satisfy FAA requirements and thereby obtain FAA financing for the remaining phases of the retaining wall repair project. Plaintiff also claims that it was encouraged to resubmit its qualifications for the remainder of the project, which plaintiff did. The Board's Ad Hoc Selection Committee ranked plaintiff number 1 out of the 11 firms that submitted proposals.
The Board adopted another resolution on September 20, 1995, noting that following the RFQ advertisement, the Ad Hoc Selection Committee presented an unranked list of the top five engineering firms meeting the criteria set forth by the Board. Plaintiff was one of the five firms on the list. The Board authorized a committee consisting of Board Commissioners Richard Sackett, Robert Ramelli and Mickey Easterling to review the qualifications of the five firms and make a selection for the next phase of the project "when the funding becomes available by September 22, 1995." The committee selected Design Engineering, Inc. ("DEI") for the project.
On November 10, 1995, plaintiff filed a petition for breach of contract against the Board, alleging that the Board's termination of the June 16, 1994 contract was arbitrary, capricious, and in violation of contract law. Plaintiff further alleges that the Board terminated its contract with plaintiff to award the remaining work on the retaining wall project to a rival firm preferred by the Board, to the harm and prejudice of plaintiff. Plaintiff alleges that the Board violated its obligation to perform contracts in good faith as required by La. C.C. article 1983.
After a bench trial, the trial court rendered judgment in favor of plaintiff and against the Board in the amount of $521,279.00 plus interest from the date of *23 judicial demand and costs of the proceedings. The court also awarded plaintiff attorney fees. Following a subsequent hearing, attorney fees in the amount of $160,611.45 were taxed against the Board along with certain fees and costs specified in the judgment. The Board appeals both judgments, and plaintiff answered the appeal regarding the award of attorney fees, requesting an increase in the award for fees and costs incurred in the post-trial and appellate proceedings.
In its reasons for judgment, the trial court found that the June 16, 1994 contract included all three phases of the retaining wall repair project. The court also found that a preponderance of the evidence showed that the Board's purpose of terminating its contract with plaintiff was to award the project to DEI for a reason other than obtaining FAA funding. Therefore, the court found that the Board terminated the contract in bad faith.
On appeal, the Board argues that the trial court erred in finding that the Board breached its contract with plaintiff, and in awarding damages and attorney fees to plaintiff. The Board argues that the June 16, 1994 contract only encompassed the study phase of the project. It claims that there was no agreement for plaintiff to perform the design and construction phases of the project because the contract did not specify the compensation for those phases. The Board claims that it had nothing more than an "agreement to agree" on the price of the design and construction phases, and therefore, there was no valid contract for plaintiff to perform this work. Plaintiff's response to this argument is that the contract encompassed all three phases, and that this is evidenced by the contract itself, the extrinsic evidence surrounding the execution and termination of the contract and the witness testimony.
As stated above, the trial court found that the contract authorized plaintiff to perform all three phases of the project. The court noted that the first page of the contract provides that plaintiff was to perform "all necessary professional services" in connection with the project defined as "Repair of East Side Retaining Wall." The contract sets forth, in detail, the services required for each of the three phases. The trial court concluded that if there were no intent to include all three phases, the references to any phase other than the study phase could have been deleted from the contract by the Board prior to the contract's execution.
The trial court found that although the fee proposal attached to the contract encompassed only the study phase, the evidence and testimony shows that the fees for the design and construction phases could not be specified prior to the completion of the study phase. The parties agreed in the contract that compensation for the design and construction phases would be covered in a supplemental agreement to the contract. The court concluded that the absence of fee proposals for the remaining phases does not provide a basis for determining that the remaining phases were not included in the June 16, 1994 contract.
We agree with the trial court's conclusion that the contract between plaintiff and the Board encompassed the study, design and construction phases. The wording of the contract itself strongly supports that conclusion. The contract states that plaintiff was being retained to perform "all necessary professional services" in connection with the repair of the retaining wall, and it includes a detailed list of the services required for all three phases. There would be no reason to include in the contract a delineation of the services required for the design and construction *24 phases of the project if those phases were not to be performed by plaintiff.
With regard to the contract only stipulating fees to be paid for the study phase, we are persuaded, as was the trial court, with testimony presented that these fees could not be determined prior to completion of the study phase. The inclusion of language stating that the fees for the design and construction phases would be set forth in a supplemental agreement to the contract further evidences the parties' intention that plaintiff was to perform all three phases of the project. Additionally, in Article 8 of the contract, entitled "Payment," references are made to the design and construction phases. Although specific compensation amounts are not mentioned, this Article discusses instructions for plaintiff to follow in order to be compensated for the design and construction phases. We find no merit in the Board's argument that its contract with plaintiff encompassed only the study phase of the retaining wall project.
The Board also argues that it had the right to terminate the contract at any time, and for any reason or no reason. Article 16 of the contract, entitled "Termination or Suspension," states, in pertinent part:
16.1 The terms of this Agreement shall be binding upon the parties hereto until the work has been completed and accepted by the Owner and all payments required to be made to the Engineer have been made; but this Agreement may be terminated under any or all of the following conditions:
* * *
16.1.5 By the Owner/Engineer upon thirty (30) days notice to the Owner/Engineer in writing and Owner paying fees due for completed work.
Although the parties agreed on the inclusion of this "termination at will" provision, the parties also had an obligation to assert their contractual rights in good faith. Louisiana Civil Code article 1983 requires that contracts be performed in good faith. Louisiana Civil Code article 1759 states that good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.[1] Thus, while it is undisputed that the Board (or plaintiff) had the right to terminate the contract at will, the question presented in this case is whether or not that right was exercised in good faith as required by the Civil Code.
Bad faith is not the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will. Fertel v. Brooks, XXXX-XXXX, p. 15, n. 12 (La.App. 4 Cir. 9/25/02), 832 So.2d 297, 306, n. 12 citing Williams v. Coe, 417 So.2d 426, 430 (La.App. 1 Cir.1982). The determination of whether a party to a contract acted in bad faith is a factual determination to be made by the trial court and therefore subject to the manifest error/clearly wrong standard of appellate review. Weeks v. T.L. James & Co., 626 So.2d 420, 425 (La.App. 3 Cir.1993), citing Rosell v. ESCO, 549 So.2d 840 (La.1989). Furthermore, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though this court may feel its own evaluations and inferences are as reasonable. Id. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands *25 great deference to the trier of fact's findings. Id. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
In this case, conflicting testimony was presented as to the Board's reasons for terminating its June 16, 1994 contract with plaintiff for engineering services in connection with the repair of the retaining wall at the Lakefront Airport. The Board presented the testimony of several witnesses, including some who were Board commissioners at the time of the termination of the contract. Those testifying on behalf of the Board stated that the contract with plaintiff had to be terminated, and a reselection process begun, in order to obtain FAA funding for the design and construction phases of the project.
The plaintiff's main witness was Mr. Robert Harvey, who was the president of the Board at the time the contract at issue was executed and terminated by the Board. Mr. Harvey was no longer the president of the Board at the time of trial in this matter. Mr. Harvey testified that other members of the Board decided to terminate the contract with plaintiff so that the contract for design and construction could be given to DEI, which in turn would give subcontract work to another company, C.S. Consultants.[2] According to Mr. Harvey, one of the Board commissioners, Mr. Robert Ramelli, had a close relationship with the owner of C.S. Consultants, and wanted to send Board work to that company. Mr. Harvey said that contrary to the Board's assertion that the contract with plaintiff had to be terminated, and a reselection process had to be implemented, to obtain FAA funding, this was a ruse used by the Board to mask the real reason for the termination, which, according to Mr. Harvey, was to give the remainder of the retaining wall project to a politically preferred, but less qualified, engineering firm. Mr. Harvey testified that the award of the contract to DEI was a prearranged deal "from the get-go."
Former Board Commissioners Ramelli, Sackett and Easterling presented testimony that conflicted with that of Mr. Harvey. All maintained that the reason for the termination of the plaintiff's contract, and the subsequent reselection process, was to obtain FAA funding for the project.
It is undisputed that plaintiff's contract with the Board stated that the project was subject to FAA funding, and that the Board has consistently sought FAA funding for the project. Plaintiff claims that the Board knew it was not going to receive FAA funding when plaintiff's contract was terminated and when DEI was awarded the new contract for the design and construction phases. The trial court agreed with plaintiff on this issue, finding that the Board knew the FAA would not fund the project when plaintiff was advised that its contract was being terminated in order to obtain FAA funding for the remainder of the project.
We disagree with the trial court's finding that the Board knew there would be no FAA funding when it terminated its contract with plaintiff. The Board did not receive confirmation of that fact until 1997, two years after plaintiff's contract was terminated. In a September 15, 1997 memorandum to Commissioner Robert E. Smith Lupo, the Board's Chief Engineer, Stevan Spencer, stated that the FAA had informed the Board "within the last two weeks" that funding would not be available *26 because of the FAA's position that the retaining wall project was "a maintenance project that is the responsibility of the owner to repair."
However, even though we disagree with the trial court's conclusion that the Board knew it would not get FAA funding when it terminated plaintiff's contract, the Board certainly had received very strong signals from the FAA that funding would not be forthcoming. But even assuming that the Board was still holding out realistic hope that it could obtain FAA funding, the record supports the trial court's conclusion that this funding goal was not the Board's actual reason for the termination of plaintiff's contract. The court found that the Board terminated its contract with plaintiff to award the remainder of the retaining wall project to DEI for a purpose other than obtaining FAA funding. That other purpose, according to plaintiff's witness Mr. Harvey, was to give the contract to DEI because DEI was going to give subcontract work to a firm with personal connections to a Board commissioner.
As noted by the trial court, DEI was involved in the original construction of the retaining wall that subsequently failed and necessitated the repairs that are the subject of the contract at issue. The court also noted that evidence in the record shows that the U.S. Army Corps of Engineers complained about DEI's work to such an extent that it threatened to secure design services elsewhere. In light of that evidence, the trial court apparently did not find credible the testimony offered by the Board that contracting with DEI was the Board's best chance of securing FAA funding for the remainder of the retaining wall project. We agree with the trial court that the testimony in support of that position was not credible.
Similarly, we are not persuaded by the Board's argument that Commissioner Ramelli's allegedly acrimonious relationship with DEI President Walter Baudier precludes a finding that DEI was a politically preferred firm to whom the Board wanted to award the remainder of the contract. According to the testimony of Mr. Harvey, the Board's motivation in terminating its contract with plaintiff was to award the contract to DEI because DEI was going to give subcontract work to C.S. Consultants, which was owned by a friend of Commissioner Ramelli.
The trial court was presented with conflicting testimony on the issue of the Board's motivation in terminating plaintiff's contract. The court made a credibility call, and obviously determined that the testimony of Mr. Harvey was more credible than that of the witnesses testifying for the Board on that issue. The trial court's credibility determination was reasonable. Furthermore, the court's finding that plaintiff's contract was terminated in bad faith is supported by the record, and is not manifestly erroneous or clearly wrong. We also find no error in the trial court's conclusion that the change in the Board's composition after the termination of plaintiff's contract and subsequent awarding of the contract to DEI does not negate a finding of bad faith termination in this case.
Next, the Board argues that the trial court erred in its assessment of damages awarded to plaintiff. The Board claims that the plaintiff's calculation of damages improperly subtracts executive compensation and fringe benefits from variable costs, and would result in "a gigantic, unprecedented windfall" to plaintiff. On the issue of damages, the parties each presented testimony from a CPA. Plaintiff presented the testimony of Ms. Holly Sharp, and the Board offered the testimony of *27 Mr. Kent Berger. The trial court accepted Ms. Sharp and Mr. Berger as experts in the calculation of damages.
In reasons for judgment, the trial court found that the testimony of Ms. Sharp was more persuasive on the issue of damages. However, the court found that plaintiff should recover only for profits lost as a result of the performance of the design phase by DEI, as the subsequent construction phase of the project was never performed. Ms. Sharp arrived at the figure of $521,279.00 as profits lost by plaintiff in not being able to perform the design phase of the retaining wall project. Ms. Sharp explained her methodology in her calculation of plaintiff's lost profits, and listed the documents that she reviewed prior to the rendition of her detailed report. Ms. Sharp listed the publications to which she referred on the subject of the calculation of lost profits, and the formula used by her in her calculations.
The Board argues that Ms. Sharp's calculations are incorrect, and that the trial court should have instead adopted the calculations of its expert, Mr. Berger. The trial court evaluated the testimony of both experts and found Ms. Sharp's testimony more persuasive on the issue of damages. This was a credibility determination that is not manifestly erroneous or clearly wrong. The trial court's award of damages for lost profits on the design phase only is also not manifestly erroneous or clearly wrong.
Finally, the Board argues that the trial court erred in awarding attorney fees to plaintiff. We agree. As a general rule, attorney fees are not due and owing a successful litigant unless specifically provided for by contract or by statute. Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014, 1015 (La.1984). A suit for breach of contract, absent a specific contractual provision for attorney fees, is not an exception to this general rule. Willett v. Premier Bank, 97-187, p. 10 (La.App. 3 Cir. 6/4/97), 696 So.2d 196, 201. This rule applies even if the obligor is in bad faith in breaching the agreement. Lamonte v. Premier Sales, Inc., 00-298, 00-299, p. 8 (La.App. 5 Cir. 10/18/00 and 10/19/00), 776 So.2d 493, 497.
In the instant case, the contract between plaintiff and the Board did not include a provision for the award of attorney fees, and we find no statutory authority for such an award in this case. Even though we find no error in the trial court's conclusion that the Board acted in bad faith in terminating the contract, such a finding does not entitle the plaintiff to an award of attorney fees. Accordingly, we reverse the award of attorney fees to plaintiff.
Plaintiff also answered the appeal, arguing that it is entitled to an additional award of attorney fees and costs incurred in the post-trial and appellate proceedings in this matter. For the same reasons assigned for the reversal of the trial court's award of attorney fees, we find no merit in plaintiff's claim for additional attorney fees. We also deny plaintiff's claim for additional costs.
For the reasons stated above, we reverse the trial court's award of attorney fees to plaintiff. In all other respects, the trial court judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] See also Revision Comment to Louisiana Civil Code article 1770 in which the requirement of good faith is discussed specifically in the context of termination of "at will" contracts.
[2] C.S. Consultants is also referred to in the record as CS & Associates. We will refer to this company as C.S. Consultants.