DREW, J.
 

 |, The underlying dispute is whether a claimant who believed he was to be employed by his company’s new owners has a
 
 *93
 
 cause of action when the employment did not materialize. We affirm the judgment sustaining the exceptions of no cause of action and dismissing the action with prejudice.
 

 Employed as Chief Financial Officer (CFO) for Lincoln Health Systems (Lincoln), James E. Allbritton took part in negotiations in 2007 between Lincoln and Community Health Systems Professional Services Corporation (Community) resulting in a purchase agreement. In his initial petition, Allbritton alleged that:
 

 • He was offered a $270,000 financial package including a $90,000 severance payment and a one-year consulting contract for $180,000.
 

 • Based upon statements by employees, officers and agents of Lincoln and Community and by silence, Allbritton was led to believe that his position as CFO was to continue with the new owners; the representations were false.
 

 • Relying on the misrepresentations, Allbritton did not accept the severance package and attempted to negotiate a different package; had he not been misled about future employment, he would have accepted the severance package initially offered.
 

 • Allbritton ultimately received a $93,000 severance payment and a six-month consulting contract for $62,000, totaling $155,000 as part of the transition from Lincoln to the new ownership.
 
 [1]
 

 In his suit for damages, Allbritton sued Lincoln, Community,
 
 [2]
 
 and Ruston Louisiana Hospital Company, L.L.C. (the hospital). Community and the hospital responded with an exception of no cause of action and an alternative exception of vagueness, noting the petition failed to assert which 1 ^defendant offered the consulting contract and to whom Allbritton was to render services. Which defendant made representations about employment and which remained silent is unclear and there were no specific misrepresentations alleged. Asserting Allbritton failed to state a cause of action for detrimental reliance, defendants also asserted the petition was impermissibly vague.
 

 Lincoln also filed alternative exceptions of no cause of action and vagueness based upon grounds similar to those raised by Community and the hospital. Essentially, Lincoln asserted that Allbritton’s detrimental reliance action was based upon the defendants’ failure to provide him at-will employment.
 

 On September 15, 2008, the trial court sustained the exceptions of vagueness and no cause of action. The trial court allowed plaintiff 30 days to amend his petition. In Allbritton’s amended petition, he alleged:
 

 • The Asset Purchase Agreement among Lincoln (seller), the hospital (buyer) and Community (guarantor of the hospital’s obligations) provided that at closing Lincoln would terminate all its employees at the hospital and the hospital would hire substantially all active employees as of the closing date in positions and compensation consistent with those provided by Lincoln just prior to closing.
 

 • Allbritton was advised by Lincoln’s corporate counsel and by Lincoln’s CEO, Tom Stone, that Allbritton was
 
 *94
 
 included among Lincoln’s employees who would be hired by the hospital.
 

 • Community’s CEO, Doug Sills, advised Allbritton that Allbritton was included among Lincoln’s employees who would be hired by the hospital.
 

 • The actions and inactions of other Community employees and agents (including Bill Heburn, Brent White, and David Miller) led Allbritton to believe that Allbritton was included among Lincoln’s employees who would be hired by the hospital.
 

 Is* On or about March 15, 2007, Lincoln offered Allbritton the initial buyout package detailed in the original petition.
 

 • Lincoln’s corporate counsel urged All-britton (who also relied upon representations made to him by Lincoln and Community personnel) to refuse the initial financial offer; Allbritton also attempted to negotiate a different package which he submitted to the Lincoln Health Systems Transition Committee on or about March 19, 2007.
 

 • The committee and representatives of Community met on March 20 to consider Allbritton’s proposal; they also requested that Argent Financial Services submit a proposal for the work Allbritton was seeking; the CEO of Argent was among the committee members who rejected Allbritton’s proposal and requested that Argent submit a proposal for Allbritton’s work.
 

 • On March 28, 2007, the Lincoln Transition Committee accepted the Argent proposal after which Shaun Carpenter of Community advised Allbritton he would not be hired by the hospital.
 

 • On March 30, 2007, Terry H. Hendon, vice president of the hospital, confirmed by letter that Allbritton would not be hired by the hospital.
 

 • On April 5, 2007, the Lincoln Transition Committee approved a financial package from Lincoln, including the Allbritton package totaling $155,000 detailed previously.
 

 • Allbritton alleged that had he been accurately advised about his lack of future employment, he would have accepted the initial offer but because he relied upon the representations, misrepresentations and silence of the parties’ officers, agents and employees, he was damaged financially.
 

 • Lincoln permitted Allbritton’s competitor, Argent, to participate in the decision not to hire him and asked Argent to submit a proposal competing with Allbritton’s.
 

 Community, the hospital, and Lincoln responded to Allbritton’s amended petition with exceptions of no cause of action. Community and the hospital asserted that Louisiana is an at-will employment state in which an employer owes no obligation to hire or to continue employment. The trial court again sustained the exceptions of no cause of action, stating, “How can a person say he has been damaged when he was promised an |4at-will position?” Allbritton appealed the judgment which sustained the exceptions of no cause of action and dismissed his suit with prejudice.
 

 DISCUSSION
 

 In
 
 Gipson v. Fortune,
 
 45,021-CA (La.App.2d Cir. 1/27 /10), 30 So.3d 1076,
 
 unit denied,
 
 2010-0432 (La.4/30/10), 34 So.3d 298, this court stated that the purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Triable on the face of the pleadings, the peremptory exception is resolved by the trial court on the well-
 
 *95
 
 pleaded facts in the petition, all of which are accepted as true. In reviewing a trial court’s ruling sustaining an exception of no cause of action, the appellate court conducts a
 
 de novo
 
 review, because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition.
 

 On appeal, Allbritton argued that his petition stated a cause of action based upon detrimental reliance in La. C.C. art. 1967:
 

 Cause is the reason why a party obligates himself.
 

 A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
 

 In
 
 Suire v. Lafayette City-Parish Consol. Gov’t,
 
 2004-1459 (La.4/12/05), 907 So.2d 37, the supreme court explained that the doctrine of detrimental reliance prevents injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. |,No establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance.
 

 Proof of detrimental reliance does not require proof of an underlying contract, because detrimental reliance is not based upon the intent to be bound. Detrimental reliance rests on “the idea that a person should not harm another person by making promises that he will not keep.”
 
 Suire, supra.
 

 Evaluation of a detrimental reliance claim examines not whether the parties intended to perform, but whether a representation was made in a way that the promisor should have expected the promis-ee to rely upon it, and whether the promis-ee so relied to his detriment.
 
 Suire, supra.
 

 In
 
 May v. Harris Management Corp.,
 
 04-2657 (La.App. 1st Cir.12/22/05), 928 So.2d 140, the court stated that recovery under detrimental reliance is difficult, because estoppel is not favored in our law. Estoppel claims must be examined with care and strictness.
 

 Lincoln was in the process of selling its facility to the hospital entity. The Lincoln Health Systems Transition Committee was negotiating a severance package with All-britton, Lincoln’s Chief Financial Officer. Allbritton alleged he rejected an initial offer of severance pay and consulting work worth $270,000 because Lincoln’s CEO, Tom Stone, and Lincoln’s counsel had both advised him that he would be hired by the new hospital owners. Instead, Allbritton made a counteroffer which was | ¿rejected. Informed he would not be hired by the hospital, Allbritton accepted a counteroffer worth $155,000 for severance pay and consulting work. Another proposal from Argent Financial Services was accepted, apparently for work Allbritton had expected to perform.
 

 Allbritton cited
 
 Baines v. Young Men’s Christian Ass’n of Greater New Orleans,
 
 06-1423 (La.App. 4th Cir.10/3/07), 969 So.2d 646,
 
 writ denied,
 
 07-2146 (La.1/7/08), 973 So.2d 727, which found a cause of action had been stated by Baines who quit her previous job relying on a specific offer of employment made on at least three occasions for a particular salary
 
 *96
 
 and a specific start date. When the job did not materialize, Baines was unable to find employment for several months and sued for damages. Although Louisiana is an at-will employment state, there is a duty of good faith. The
 
 Bains
 
 court stated that if Baines proved bad faith, “there may be a remedy under our civil code.”
 

 Allbritton also relied upon the factually and proeedurally inapplicable case of
 
 N-Y Associates, Inc. v. Board of Commissioners of Orleans Parish Levee Dist.,
 
 04-1598 (La.App. 4th Cir.2/22/06), 926 So.2d 20,
 
 twit denied,
 
 06-0666 (La.5/26/06), 930 So.2d 31. The disputed contract provided either party could terminate the contract with 30 days’ written notice and payment for completed work. Following the trial, the court found the contract was wrongfully terminated and in bad faith by the levee board. While we have no disagreement with
 
 N-Y Associates, supra,
 
 the opinion following a trial on the merits of a contract dispute does not assist Allbritton.
 

 |7We have already acknowledged an “overriding duty” of good faith exists in employment matters.
 
 Bains, supra.
 
 La. C.C. art. 2024 states, “A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.” Comment (e) thereto provides that “the parties must comply with the overriding duty of good faith.”
 

 In
 
 May v. Harris, supra,
 
 May was hired as administrator of a nursing home. After accepting the offer of employment, May resigned her job as administrator of another nursing home. Prior to May assuming her duties, she visited the new nursing home on several occasions to ease her transition. Based upon complaints and conflicts in management styles, Harris withdrew the employment offer five days before May’s scheduled start date. She could not return to her old position which had been filled but May found a position as administrator of another nursing home within a short time and at an increased salary.
 

 The majority found that May could not recover, since she unreasonably relied upon a promise of at-will employment. Concurring in the result, Judge Downing stated that the at-will employment doctrine does not apply to a party who is not yet an employee. However, May found comparable employment at an increased salary and failed to prove damages. Therefore, Judge Downing agreed with the denial of damages sought by May.
 
 May v. Harris, supra.
 

 Our review of this record does not require a resolution of the conflicting views on whether at-will employment principles apply to a | ^person who has been offered employment but has not yet been hired. Accepting as truthful the original and amended petitions, the Allbritton allegations do not establish a cause of action based upon the three required elements of detrimental reliance.
 

 Detrimental Reliance
 

 Reliance on a Promise
 

 Unlike claimants in
 
 Bains
 
 and
 
 May, supra,
 
 Allbritton did not resign employment based upon a more desirable job offer. Employment of all Lincoln employees including Allbritton was ending with the sale of the hospital when all Lincoln employees were being terminated.
 

 Based upon statements, actions, and silences which we accept as true for the purpose of reviewing the exceptions of no cause of action, Allbritton had hoped that he and other Lincoln employees would be hired by the new owners of the hospital. Lincoln and Community personnel conveyed to Allbritton that the new owners planned to employ Allbritton and others. Allbritton did not allege that any specific
 
 *97
 
 salary or other employment terms and conditions were ever discussed or that a specific job offer to be CFO was made by the new owners of the hospital.
 

 While Allbritton would have accepted the initial severance package had he known he would not be hired by the new hospital owners, his allegations show that he considered and rejected that initial severance offer in an apparent effort to obtain a more advantageous severance deal for himself. During these active negotiations, the new owners apparently decided that Allbritton’s future services as CFO would not be required.
 

 13Reasonableness of Reliance
 

 Even if all of Allbritton’s allegations are true, the transfer of hospital ownership from Lincoln to the new owners was in a state of flux with ongoing negotiations. The new owners at one point intended to hire “substantially all active employees” at compensation levels “consistent with those being provided by Lincoln.” However, “substantially all” is not the same as all and compensation “consistent with” is not the same pay.
 

 Allbritton expected to be among those Lincoln employees rehired by the new owners and had received some assurances from his old employer, Lincoln, and from personnel with Community, the guarantor of the new hospital’s obligations. There are no allegations concerning any discussions about future employment between Allbritton and the new hospital owners. Allbritton relied upon statements, actions and silences of his soon-to-be former employer, Lincoln, and Community, the guarantor of the obligations of the new hospital owners.
 

 In both
 
 Bains
 
 and
 
 May,
 
 discussed previously, the employers themselves made specific job offers with definitive terms of employment which were accepted by both Bains and May. By contrast, Allbritton had nothing more than a hope of being employed as CFO of the hospital. His allegations accepted as true do not contain any information about direct discussions of terms, duties, compensation, or any other aspects of employment; there was no indication that Allbritton had accepted employment with the new owners. Allbritton apparently misjudged his bargaining strength and failed in his attempt to negotiate a better severance.
 

 ImLincoln personnel conveyed to Allbrit-ton their understanding that he was among Lincoln employees to be hired by the new owners. Allbritton made no assertions which establish how his former employer could be responsible for the new owner’s decision not to hire him. Moreover, Allbritton cited no authority making Lincoln responsible for Allbritton’s understanding of future employment by another legal entity.
 

 Along with the failure to allege he received a specific job offer, Allbritton makes no statements that he specifically accepted a job offer from the new hospital owners or even had some direct understanding with them. While we accept that he rejected the initial severance package based upon an understanding of future employment, his hope and expectation of future employment did not constitute reasonable reliance on a promise of employment under the facts presented in his petitions.
 

 Detriment or Damages
 

 The severance package Allbritton ultimately received was $115,000 less that the original offer made. Because Allbritton’s petitions do not assert that he reasonably relied to his detriment on a promise of employment, it is unnecessary to address damages.
 

 Good Faith
 

 In a effort to bolster his claim based upon the reasoning in
 
 Bains, supra,
 
 
 *98
 
 Allbritton made vague allegations that a representative of Argent Financial Services served on Lincoln’s transition committee which ultimately awarded a contract to Argent for transition work that Allbritton apparently expected to do. All-brittoris amended petition did not estab-lishjjjthe status of the Lincoln transition committee and did not state how any of the defendants breached any promise to Allbritton based upon the actions of the committee.
 

 Louisiana recognizes the overriding duty of good faith in employment matters.
 
 Bains, supra;
 
 Judge Downing’s concurrence in
 
 May, supra;
 
 La. C.C. art. 2024 and comments thereto.
 

 Allbritton sought to infer that somehow the transition committee and Argent were in bad faith in ultimately awarding a contract to Argent. However, Allbritton provided no basis for that inference. Allbrit-ton has not set forth any actions by the defendants which constitute bad faith in the fluid situation involving the transfer of the hospital to the new owners. Allbritton himself was relying on his own role as CFO of Lincoln prior to the sale and as a negotiator of the terms of the hospital sale to secure for himself a more favorable severance package and future employment with the new hospital owners. This action followed the unsuccessful conclusion of his efforts.
 

 CONCLUSION
 

 Because the original and amended petitions accepted as true for the purposes of reviewing this record do not establish that Allbritton reasonably relied on a promise of employment, the trial court correctly sustained the exceptions of no cause of action.
 

 DECREE
 

 As plaintiffs costs, the judgment of the trial court sustaining the defendants’ exceptions of no cause of action and dismissing the action with prejudice is AFFIRMED.
 

 [1]
 

 . This was a financial loss to him of $115,000.
 

 [2]
 

 . Community was named as Community Health Systems and CHS/Community Health Systems Professional Services Corporation, but stated in pleadings that its correct name was CHS/Community Health Systems Professional Services Corporation.