MICHAEL E. KIRBY, Judge.
| ^STATEMENT OF THE CASE
Plaintiff in this matter, Elizabeth Lassi-ter Bains, seeks reversal of the trial court’s decision granting the defendant’s exception of no cause or right of action. We reverse and remand.

FACTS

Early in Ms. Bains’ career, she was employed as a fundraiser for a non-profit organization, and earned a reputation for good work. For family reasons, she had to leave that employment. In May 2005, TLC Linen Services employed Ms. Bains at a salary of $40,000 per annum. In May 2005, the plaintiff began discussing potential employment opportunities with the defendant organization. Her affidavit and petition stated that on May 20, 2005, the, CEO of the YMCA, Darrell Johnston (hereinafter “CEO”), offered her the position of Director of Development in charge of fundraising activities. This was a salaried position paying $65,000 per annum with a possible bonus.
Between May 20 and June 8 the plaintiff and the CEO were in contact numerous times. On no less than three occasions, the CEO reiterated that she was 12offered the job. Moreover, on May 24, 2006, the CEO sent the following email to the plaintiff:
Elisabeth,
We are set for a noon lunch on Thursday, June 2nd, with some of the Development Committee of the Board of Directors. Please plan to arrive at our 2525 Canal Street office (next door to the United Way) at 11:00 a.m. that day to meet with some of the staff. Unless you change your mind after meeting everyone, I would like you to start on June 6. I will get out an offer letter in the morning.
*648 Subsequent to receiving this email, plaintiff resigned her job at TLC Linen Services.
As per the email correspondence, Ms. Bains presented herself at defendant’s office for the meeting. At the meeting, the CEO informed Ms. Bains that the YMCA’s budget numbers “weren’t so hot” and that she might have to start the job at the end of June instead of on June 6. Nevertheless, the meeting went so well that while there one of the Committee members even asked the plaintiff if she could start work that afternoon. At the conclusion of the meeting the CEO told the plaintiff that he would be in touch with her by June 8, 2005.
However, by June 8 the plaintiff had not heard from the CEO. On June 9, 2005, the CEO then informed her that there was a pronounced budget shortfall which prohibited the organization from immediately filling the Development Director vacancy. He notified her that the position would not likely be filled until the fall of 2005, but he could not guarantee that he could hire her at that time.
Following this conversation and the realization that the YMCA was unable to employ her plaintiff sought other employment but was unable to obtain a job for seven months. On August 25, 2005 she filed a petition alleging she relied to her ^detriment on the CEO’s promise of a job offer and has lost wages or other compensation as a result of this reliance. The plaintiff filed this suit under La. C.C. art. 1967, claiming she is entitled to compensation for her detrimental reliance upon the CEO’s conduct, promises, and representations. The defendant subsequently filed an Exception for No Cause or Right of Action. The trial court rendered a decision in favor of the defendant, granting the exception. Following that judgment by the trial court the plaintiff filed this appeal.

STANDARD OF REVIEW

An exception of no cause of action is a peremptory exception. La. C.C.P. art. 927. Because the exception of no cause of action raises a question of law and the district court’s decision is based solely on the sufficiency of the petition, appellate review of the district court’s ruling on an exception of no cause of action is de novo. Scheffler v. Adams Reese, L.L.P., p. 5, 06-1774, (La.2/22/07) 950 So.2d 641, 647.

DISCUSSION

At the outset it is only appropriate to note that while plaintiff focuses on the theory of detrimental reliance, a theory with roots in equity at common law, the civil law offers an alternative analysis that focuses on the concept of unilateral declaration of the will as well as offer and acceptance.[1]
Moreover, in Lieux v. Mitchell, 06-0382, p. 15 (La.App. 1 Cir. 12/28/06), 951 So.2d 307, 317 our brethren recently stated:
|4Louisiana is a fact-pleading jurisprudence [sic]. Mehta v. Baton Rouge Oil Company, Inc., 99-1773, p. 5 (La. App. 1st Cir.9/22/00), 768 So.2d 243, 246. Since “theory of the case” pleading has been abandoned, the courts of this state require only that a pleading set forth the facts upon which relief may be granted. See La. C.C.P. art. 891; Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060, 1064 (La.App. 1st Cir.), writ de *649 nied, 567 So.2d 109 (La.1990). Recovery may be granted to a party under any legal theory justified by the facts pled. See La. C.C.P. art. 862; Mehta, 99-1773 at p. 5, 768 So.2d at 246; Spencer-Wallington, Inc., 562 So.2d at 1064. However, the petition must set forth facts upon which such recovery can be based. Sledge v. Continental Casualty Co., 25, 770, p. 20 (La. App. 2nd Cir.6/24/94), 639 So.2d 805, 819.
Lieux, at 15.
Thus, even though plaintiff specifically pleads detrimental reliance as her theory of recovery, we may analyze the facts pled under other legal theories to see if she is entitled to recovery.
In 1985, the Louisiana Civil Code recognized detrimental reliance as a basis of obligations. However, the civil code contains other devices for the enforcement of promises in cases of reliance, the issue which lies at the heart of this case. The Roman maxim venire contra factum pro-prium non valet, which means “no one can contradict his own act” or “no one is allowed to go against the consequences of his own act”[2] was founded on the notion that “it is not licit to enforce a right in contradiction to one’s previous conduct, when that conduct, interpreted in good faith, would justify the conclusion that the right does not exist or will not be enforced.” [3] This civilian maxim is similar to that of equitable estoppel and has been applied in Louisiana jurisprudence.[4] The civilian doctrine of culpa in \Rcontrahendo, which means “fault in contracting,” performs a function similar to that of promissory estoppel and has also been applied in Louisiana jurisprudence.[5]
Moreover, Louisiana’s Civil Code Art. 1757, entitled “Sources of obligations,” states:
Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of affairs of another, unjust enrichment and other acts or facts. [Emphasis added.]
Thus, unlike the common law analysis of a contract using consideration which requires something in exchange, the civil law concept of “cause” can obligate a person by his act of the will. The difference has been analogized to a civilian contract-consent approach compared to a common law contract-bargain approach. Consideration is an objective element required to form a contract, whereas cause is a more subjective element that goes to the intentions of the parties. Therefore, in Louisiana law, a person can be obligated by both a gratuitous[6] or onerous[7] contract.
In sum, using a traditional civilian analysis, the relevant query to determine whether liability attaches is whether abandonment of negotiations was accompanied *650 by fault. In this case, if the CEO engaged in wrongful conduct by revoking his offer to employ Ms. Bains that was accepted, then a remedy or reparations would be appropriate. This analysis is yet another appropriate formulation of the problem presented in this case, even though the legislature has created more specific articles that apply.
| (¡Plaintiff expressly pleads La. C.C. art.1967, entitled “Cause defined; detrimental reliance,” which states:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The detrimental reliance theory is a general part of the Civil Law and springs forth from the idea that in a civil society people should keep their word. In order to invoke the doctrine of detrimental reliance, the claimant must prove three elements: (1) a representation by word or conduct; (2) justifiable/reasonable reliance; and (3) a change in position to one’s detriment because of the reliance. Lakeland Anesthesia v. United Healthcare of Louisiana, 03-1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 393.
Defendant cites May v. Harris Management Corp., 04-2657, (La.App. 1 Cir. 12/22/05), 928 So.2d 140, contending it is the only Louisiana case to address this precise issue. In May the plaintiff filed a claim against her potential future employer, Harris Management Corp., asserting that she reasonably relied on its offer of employment to her detriment. She filed the complaint seeking damages for detrimental reliance arising out of the withdrawal for an at-will employment offer. The Court was divided. The author’s view became the majority opinion with the aid of a concurrence. There was a dissent. The appellate Court affirmed the trial court’s grant of the defendant employer’s summary judgment.
|7The writer of the opinion, without thoroughly consulting the Civil Code, first used stare decisis, as opposed to jurisprudence constante, to arrive at the conclusion that detrimental reliance claims of employees terminated after such employees worked a short time in at-will employment situations. As the concurring and dissenting writers allude to, this was not the factual scenario presented to that court because plaintiff had not yet been employed. Extrapolating from this finding, the author then leaps outside of Louisiana law and considers cases involving at-will employment offers that were withdrawn before the prospective employee actually begins work. Such a consideration poses a twofold problem: one, most other American jurisdictions do not have a Civil Code; and two, common law jurisdictions allow their judiciary more leeway in estoppel because of the history of courts in equity.[8] Comparing this approach with the civilian approach, Louisiana’s judiciary is tied more closely to following the legislature’s mandate as laid out in the Code. The concurrence agreed with the trial court that Ms. May, the plaintiff, justifiably relied on the *651 promise of the prospective employer, however, she simply did not meet her burden of proof as regards damages. The dissenting opinion found that Ms. May did establish an adequate prima facie case of detriment suffered and that there should be no unwarranted extension of the at-will employment principle to a classic factual scenario of detrimental reliance.
In the instant case, Ms. Bains contends that May is distinguishable on the facts because she can prove detriment, due to her long period of unemployment.
| ¡¿Defendant, as in May, argues that there is a conflict between the codal articles and that the article that should prevail is La. C.C. art. 2747, entitled “Contract of servant terminable at will of parties,” which states:
A man is at liberty to dismiss a hired servant attached to his person or family, .without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
Applying the structural civilian analysis of obligations to the employment at will doctrine/article reveals that it is a conditional obligation of a resolutory nature, i.e., the obligation of the employment may be immediately enforced, but will come to an end when the conditional right of termination occurs. La. C.C. art. 1767. Even though the condition depends solely on the obligor’s will, it does not make the obligation null necessarily, such as in the case of a potestative condition, as long as the right to terminate is exercised in good faith, a term defined by La. C.C. art. 1759, which states:
Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.
Further elucidating the good faith required as regards the condition, La. C.C. art. 1770, entitled, “Condition that depends on the whim or the will of the obligor,” states:
A suspensive condition that depends solely on the whim of the obligor makes the obligation null.
A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.
[Emphasis added.]
Comment (f) to this article, art. 1770, is quite enlightening, it states that in order to comply with the requirement of good faith, a party exercising his right to terminate a contract at will should consider not only his own advantage, but also the hardship to which the other party will be subjected because of the termination. For 13example, if termination occurs because of purely personal rather than business reasons, bad faith may exist. Confer, Corenswet v. Amana Refrigeration, Inc. 594 F.2d 129, (5th Cir.1979); Lee Lumber Company, L.T.D. v. International Paper Company, 321 So.2d 42 (La.App. 3 Cir. 1976).
An at will contract has an indefinite duration. La. C.C. art.2024, entitled “Contract terminated by a party’s initiative,” states:
A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.
This article mandates reasonable notice so as “to avoid unwarranted injury to the interest of the victimized party,”[9] in this case we speak specifically of Ms. Bains loss of employment in reliance on the CEO’s declaration of will. However, Louisiana courts have found that in the at-will employment context, either the employer or employee may terminate at any time.
*652 Wusthoff v. Bally’s Casino Lakeshore Resort, p. 3, 97-1386, (La.App. 4 Cir. 2/25/98), 709 So.2d 913, 914.
Ms. Bains argues that since she was not yet an employee, the employee at will article should not apply to her. Defendant counters that it could have hired her for one minute and then fired her, thereby precluding this argument. Nevertheless, we need not address this issue today, as this is before us on the granting of an exception of no cause of action.
Because La. C.C. art. 2747 does not act as a shield that protects a master from dismissing his servant under any factual scenario, we find that our civil code may offer relief. For example, if plaintiff can prove that the defendant acted in bad faith, there may be a remedy under our civil code. We note that in paragraph 13 of | mplaintiff s petition she pleads facts to the effect that a Member of the YMCA’s Board of Directors, Mr. Allen Favrot, made a statement that directly contradicted the CEO’s representations. Discovery of defendant’s books could reveal bad faith or explain the contradictions, but that is a matter for proof at trial, and a query we need not address at this stage of the proceedings. At the very least, this petition satisfies La. C.C.P. art. 856[10] and states a cause of action recognized by the law, and that is all that is needed to defeat an exception of no cause of action.[11]
Therefore, because it is possible to reconcile the codal articles that at first blush appear to be in conflict by a thorough analysis of our civil code, and because there are certain scenarios in which the law may offer Ms. Bains relief, we reverse the granting of defendant’s exception of no cause of action and remand for further proceedings in accord with this opinion.
REVERSED AND REMANDED.
LOMBARD, J., Concurs for the Reasons Assigned by Judge KIRBY.
ARMSTRONG, C.J., Dissents.
BAGNERIS, J., Dissents for the Reasons Assigned by Chief Judge ARMSTRONG.

. Mattar, Mohamed Yehia, Promissory Estoppel: Common Law Wine in Civil Law Bottles, 4 Tul. C.L.F. 71 (1988).

. S. Litvinoff, Obligations, § 88 at 135 (7 La. Civ. Law Treatise 1975).

. J. Puig Brutau, Estudios de Derecho Comparado, (1951) at 111, quoted in Sanders v. United Distributors, Inc. 405 So.2d 536, 537 n. 2 (La.App. 4 Cir.1981).

. Davilla v. Jones, 418 So.2d 724 (La.App. 4 Cir. 1982); Sanders v. United Distributors, 405 So.2d 536 (La.App. 4 Cir.1981).

. Coleman v. Bossier City, 305 So.2d 444 (La. 1974); Snyder v. Champion Realty Corp., 631 F.2d 1253 (5th Cir.1980).

. La. C.C. art.1910.

. La. C.C. art. 1909.

. Mattar, Mohamed Yehia, Promissory Estoppel: Common Law Wine in Civil Law Bottles, 4 Tul. C.L.F. 71 (1988), See p. 139, Reasonableness of Reliance on a Gratuitous Promise Made Without the Required Formalities.

. La. C.C. art.2024, comment (e).

. La. C.C.P. art. 856 reads: In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.

. Because Louisiana Civil Procedure has substantially adopted from the Federal Rules of Procedure, it is interesting to note that La. C.C.P. art. 857 dealing with the pleading of suspensive conditions may apply. The reason being that while the Civil Law distinguishes between conditions, i.e., suspensive and reso-lutory, the common law from which the Federal Rules originate, does not make such a distinction. Applied, here art. 857, would simply require a general pleading, but since the petition meets the more specific burden of art. 856, we need not address this speculative query.