**GABRIEL MARKEL**        \*        **NO. 2023-CA-0704**

**VERSUS**        \*

      **COURT OF APPEAL**

**SHANTELL PRICE**        \*

      **FOURTH CIRCUIT**

      \*

      **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-09440, DIVISION "I-5"
Honorable Lori Jupiter, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Karen K. Herman)
**LOBRANO, J., CONCURS IN THE RESULT**


Daniel M. Redmann
DUPLASS, APLC
433 Metairie Rd
Suite 600
Metairie, LA 70001


      COUNSEL FOR PLAINTIFF/APPELLANT


Taetrece Harrison
ATTORNEY AT LAW
900 Camp Street
Floor 3 - Box 4C13
New Orleans, LA 70130


      COUNSEL FOR DEFENDANT/APPELLEE


           **REVERSED**
           **MAY 30, 2024**

This appeal involves a claim for reimbursement of expenses paid to maintain a predial servitude and adjacent property.  Appellant, Gabriel Markel ("Mr. Markel"), seeks to appeal the district court's August 9, 2023 judgment on reconventional demand that awarded Appellee, Shantell Price ("Ms. Price"), six thousand dollars for reimbursement expenses incurred for mowing the grass on Mr. Markel's property; ordered Mr. Markel to pay attorney's fees and court costs in the amount of one thousand five hundred dollars; and ordered Mr. Markel to maintain upkeep of the servitude and grass height on his property as long as he owns the property.  For the reasons that follow, the judgment of the district court is reversed and Ms. Price's case is dismissed with prejudice.

## FACTS AND PROCEDURAL HISTORY

In October 1942, Viola Schwandt and Felix Nutz (the "Nutzes"), owners of properties located at 1311-13 and 1315 Spain Street, New Orleans, Louisiana, established a predial servitude of passage on 1311-13 Spain Street in favor of 1315 Spain Street in an Act of Sale of 1311-13 Spain Street to Citizens Homestead Association.  The servitude was described as one of ingress and egress for the purposes of an alleyway/driveway for the benefit of the Nutzes, their heirs and

assigns. The alleyway/driveway measured one foot, six inches by a depth of one hundred feet. In April 2006, Ms. Price purchased the shotgun double[1] located at 1311-1313 Spain Street ("the double"). Mr. Markel purchased the adjacent undeveloped lot located at 1315 Spain Street ("the vacant lot" or "the lot") in September 2015.

Mr. Markel filed, on October 11, 2022, a petition for possession and to quiet title (the "Petition"). In the Petition, Mr. Markel alleged that a servitude did not exist in favor of the vacant lot, but if it did the servitude had been extinguished as a result of nonuse beginning in 2008. Mr. Markel further alleged that the existence of the servitude acted as a cloud on the title to his property and his right to encumber the property with a mortgage loan. Ms. Price filed an answer to Mr. Markel's Petition, denying all allegations therein. Thereafter, Mr. Markel filed a motion for summary judgment, wherein he averred that he is the owner of the dominant estate and that he expressly renounced the servitude so that it is extinguished under La. C.C. art. 771.[2] Ms. Price opposed the motion for summary judgment and further filed a reconventional demand, praying for reimbursement of expenses incurred for the maintenance of the servitude on behalf of the dominant estate in the amount of twelve thousand dollars.

The district court heard the motion for summary judgment on January 26, 2023, and rendered judgment, which confirmed as extinguished an unencumbered servitude in favor of property at 131[5][3] Spain Street in New Orleans. The district

---

[1] The term "double" has the same meaning as "duplex."

[2] Louisiana Civil Code article 771 provides that "[a] predial servitude is extinguished by an express and written renunciation by the owner of the dominant estate."

[3] The district court inadvertently identified the dominant estate as the double, when the record indicates that the double was the servient estate and the vacant lot was the dominant estate.

court specifically noted that this judgment only resolved the claims asserted by Mr. Markel and did not address the reconventional demand filed by Ms. Price. Following, Mr. Markel filed an exception of no cause of action to Ms. Price's reconventional demand, which the district court heard and later denied.

On August 1, 2023, Ms. Price's reconventional demand came for trial. The pertinent testimony elicited at trial revealed that sometime after Ms. Price purchased the double in 2006, she erected a fence between the double and the vacant lot. She hired Walter Flores, ("Mr. Flores"), of Team Work Group, LLC—a lawn care service—to mow the grass on the vacant lot. Notably, he did not mow the lawn within the fenced area, which surrounded the double. Even after Ms. Price removed the fence that divided the properties, Mr. Flores continued to mow the grass on the vacant lot at Ms. Price's direction. Ms. Price offered into evidence invoices from Mr. Flores for the years 2017 through 2022, which evidenced that Ms. Price spent twelve thousand dollars during that time period to maintain the vacant lot.

Ms. Price first met Mr. Markel sometime in 2017. Mr. Markel introduced himself as the owner of the vacant lot, and she explained that she had been mowing the grass on the lot. At that time, there was no other conversation about mowing the grass on the lot in exchange for compensation. She said that she maintained the grass on lot to prevent rodents when the grass is high. However, she admitted that she never allowed the grass to grow high. She further admitted that she maintained the vacant lot for her own use—she parked vehicles and a boat on the lot, and she set up a basketball goal on the lot for the neighborhood kids.

Ms. Price recalled that at some point Mr. Markel told her to stop mowing the grass and parking on the vacant lot. In an August 1, 2022[4] text message conversation between Ms. Price and Mr. Markel the following exchange occurred:[5]

> Mr. Markel: [I] need to ask you to not park your vehicles in my property.
>
> Ms. Price: *thumbs up emoji*
> And I need my money from cutting the grass
> From five years ago
>
> Mr. Markel: [I] had a contract with a lawn service to cut the grass there for years.
> [W]hat did we agree would be the rate for you to cut the grass? [H]ow many times did you cut the grass?
> [I] lived next to an empty lot down on [M]usic [S]treet for years. [I] know it is a pain (people pissing, graffiti). . . .

Ms. Price said that Mr. Markel called her afterwards and asked, "[H]ow much do I owe for cutting the grass?" Ms. Price responded that she had an attorney and that Mr. Markel could speak with her attorney.

According to Mr. Markel, he bought the vacant lot in 2015, and hired Cavalier Home & Gardens to provide lawn care on the vacant lot. He eventually terminated the lawn care services because the company informed him that on multiple occasions when they arrived to mow the grass on the lot, it had already been cut. It was Mr. Markel's intention to build a home for his family on the vacant lot, but when he attempted to obtain a construction loan he encountered an issue because of an existing servitude, which clouded the title to his property. Mr. Markel denied having any conversations with Ms. Price about her maintaining the vacant lot on his behalf in exchange for compensation. However, he testified that

---

[4] The parties stipulated to the date of the text message exchange.

[5] A photo copy of the text message exchange was offered, filed and introduced into the record, without objection.

he did attempt to contact Ms. Price in hopes that the issue of removing the servitude on the vacant lot could be resolved without filing a lawsuit, but to no avail. Because an agreement had not been reached, he asked Ms. Price to stop parking her vehicles on the lot. In response, Ms. Price asked for money for mowing the lot. When asked about the previously admitted text message conversation with Ms. Price, Mr. Markel explained that after Ms. Price demanded payment, he asked a rhetorical question, "What were the terms of our agreement?" Mr. Markel said that the question was asked to demonstrate to Ms. Price that there was no agreement. Nonetheless, Mr. Markel admitted that if Ms. Price had approached him with a reasonable number that was less than court costs to resolve the servitude issue, he would have been amenable to pay it.

At the conclusion of the trial, the district court took the matter under advisement and issued judgment on August 9, 2023 in favor of Ms. Price and against Mr. Markel. The district court stated that "[Mr.] Markel had extended knowledge and notice that [Ms.] Price was maintaining the servitude along with her property regularly," and ordered Mr. Price to pay six thousand dollars for her reimbursement claim "considering both parties benefitted from the upkeep of the servitude and that there was no cost difference in mowing just the servitude, just the adjacent property or both." The district court further ordered Mr. Markel to pay attorney's fees in the amount of one thousand five hundred dollars and to maintain the vacant lot and servitude to the standard grass height of two-and-a-half to three inches as long as owned the vacant lot.[6]

It is from this judgment that Mr. Markel seeks review.

---

[6] On September 6, 2023, the district court issued a Corrected Judgment of Reconventional Demand, which contains language that is identical to that of the August 9, 2023 judgment.

## STANDARD OF REVIEW

"The standard of review of the [district] court's decision in awarding damages alleged in a reconventional demand is whether the court's factual findings are manifestly erroneous or clearly wrong." *Bowes v. McIntire*, 21-672, pp. 16-17 (La. App. 5 Cir. 7/6/22), 345 So.3d 1109, 1121 (citing *Begnaud v. Camel Contractors, Inc.*, 98-207, p. 9 (La. App. 3 Cir. 10/28/98), 721 So.2d 550, 556). "To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the [district] court's finding and that the record shows the finding to be manifestly erroneous." *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC*, 19-0826, p. 5 (La. App. 4 Cir. 8/5/20), 364 So.3d 297, 301 (citing *1026 Conti Condominiums, LLC v. 1025 Bienville, LLC,* 15-0301, p. 4 (La. App. 4 Cir. 12/23/15), 183 So.3d 724, 727).

"Furthermore, '[w]here two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently.'" *Greenblatt v. Sewerage & Water Bd. of New Orleans*, 19-0694, p. 4 (La. App. 4 Cir. 12/20/19), 287 So.3d 763, 766-67 (quoting *Everhardt v. Louisiana Dep't of Transp. & Dev.*, 07-0981, p. 18 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1049). "However, 'where one or more [district] court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable.'" *Huntsman Int'l, L.L.C. v. Praxair, Inc.*, 22-0777, p. 5 (La. App. 4 Cir. 4/19/24), ___ So.3d ___, ___, 2024 WL 1695071, at *2 (quoting *Jones v. Maryland Casualty Co.*, 18-0552, 0553, 0554, 0555, pp. 5-6 (La. App. 4 Cir. 5/11/22), 339 So.3d 1243, 1247). "[I]f the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the

6

evidence." *Id.* "[A] plaintiff-in-reconvention bears the burden of establishing his claim in the same manner as the plaintiff in the main demand." *Miller v. Leonard*, 588 So.2d 79, 81 (La. 1991). "Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the entirety of the evidence establishes the fact or causation sought to be proved is more probable than not." *Lazard v. Progressive Paloverde Ins. Co.*, 19-495, p. 4 (La. App. 3 Cir. 12/18/19), 2019 WL 6898658, at *2 (quoting *Miller*, 588 So.2d at 81).

## DISCUSSION

The crux of Mr. Markel's argument is that the district court erred by granting relief to which Ms. Price was not entitled to as a matter of law. Specifically, Mr. Markel raises three assignments of error: (1) the district court erred by ordering him to reimburse Ms. Price for her maintenance of the vacant lot; (2) the district court erred by ordering him to pay Ms. Price's attorney's fees; and (3) the district court erred by ordering him to maintain the grass height on the vacant lot at two-and-a-half to three inches. We will address each assigned error in turn.

*Reimbursement of maintenance expenses*

Louisiana Civil Code Article 646 defines a predial servitude as "a charge on a servient estate for the benefit of a dominant estate." "The two estates must belong to different owners." *Id.* "In the civilian literature, the estate burdened with a predial servitude is designated as 'servient' (*praedium serviens*); the estate in whose favor (or in whose owner's favor) the servitude is established is designated as 'dominant' (*praedium dominans*)." A.N. Yiannopoulos, *Predial Servitudes*; *General Principles: Louisiana and Comparative Law,* 29 LA. L. REV. 1, 5 (1968). "[Louisiana Civil Code] Article 651 clearly states that beyond

7

maintaining the estate in condition for exercise of the servitude, '[t]he owner of the servient estate is not required to do anything.'" *Sharp v. St. Tammany Par. Ex rel. Dep't of Pub. Works*, 06-0815 (La. App. 1 Cir. 2/14/07), 2007 WL 466777, at *2. "Expenses such as maintenance of the servitude may only be assigned to the servient owner by contractual agreement." *Id.* "By contrast, [Louisiana Civil Code] Articles 744 and 745 clearly place responsibility for any affirmative acts or constructions that may be necessary for 'the use and preservation of the servitude' on the owner of the dominant estate." *Id.*

While an adjoining owner has the right to demand the removal of trees, bushes, or plants on the boundary that interfere with the enjoyment of his estate, he must do so at his own expense. *See* La. C.C. art. 687. To the contrary, "[a] landowner has the right to demand that the branches or roots of a neighbor's trees, bushes, or plants that extend over or into his property be trimmed at the expense of the neighbor." La. C.C. art. 688. This article further provides that "[a] landowner does not have this right if the roots or branches do not interfere with the enjoyment of his property." *Id.*

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. C.C. art. 1906. "An obligation is a legal relationship whereby a person, called an obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." La. C.C. art. 1756. "An obligation cannot exist without a lawful cause." La. C.C. art. 1966. "Cause is the reason why a party obligates himself." La. C.C. art. 1967. "A contract is formed by the consent of the parties established through offer and acceptance." La. C.C. art. 1927. "[U]nlike the common law analysis of a contract using consideration which requires something

in exchange, the civil law concept of "cause" can obligate a person by his act of the will." *Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 06-1423, p. 5 (La. App. 4 Cir. 10/3/07), 969 So.2d 646, 649. "The difference has been analogized to a civilian contract-consent approach compared to a common law contract-bargain approach." *Id.* "Consideration is an objective element required to form a contract, whereas cause is a more subjective element that goes to the intentions of the parties." *Id.* "Therefore, in Louisiana law, a person can be obligated by both a gratuitous or onerous contract." *Id.* "This Court has consistently noted that '[c]onsent is an absolute necessity to the formation of a contract, and 'where there is no meeting of the minds between the parties the contract is void for lack of consent.'" *Moridani v. Stone Clinical Labs., LLC*, 17-0519, p. 7 (La. App. 4 Cir. 11/22/17), 231 So.3d 803, 807 (quoting *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, L.L.C.*, 12-1233, p. 18 (La. App. 4 Cir. 2/27/13), 111 So.3d 1099, 1111).

"Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority." La. C.C. art. 1843. "Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation." *Id.* "Obligations arising without agreement for which the law has provided an equitable remedy pursuant to Title V of the Louisiana Civil Code are based on the concept of quasi-contract." *Webb v. Webb*, 01-1577, p. 6 (La. App. 1 Cir. 11/8/02), 835 So.2d 713, 718.

With these precepts in mind, we now turn to Mr. Markel's first assignment of error.

9

Ms. Price's reconventional demand sought reimbursement for expenses incurred to maintain the servitude; however, at trial her claim for reimbursement expanded to include maintenance of the vacant lot.[7] Mr. Markel contends that there is no law to support Ms. Price's claim for reimbursement for expenses incurred to maintain her own property, which encompassed the servitude area, or his vacant lot without an agreement to do so. Because Ms. Price is seeking reimbursement of monies paid for the benefit of another, she had the burden of proving the nature of the obligation that was owed to her and her entitlement to recover money as a result of the obligation. *See* La. C.C. art. 1831 (requiring the party demanding performance of an obligation to prove the existence thereof).

The evidence adduced at trial, particularly the testimony of Ms. Price and that of Mr. Flores, confirmed that: (1) Mr. Flores was hired to mow the vacant lot before and after Mr. Markel acquired ownership of the property; (2) there was no grass on the strip of driveway that encompassed the servitude; (3) Mr. Flores did not mow any grass on the double—the servient estate; (4) when the fence was erected between the double and the vacant lot, Mr. Flores performed lawn care exclusively on the vacant lot; and (5) after Ms. Price removed the fence, Mr. Flores' instructions remained unchanged—he was responsible for and compensated for mowing the grass on the vacant lot. Ms. Price's testimony further confirms that high grass did not interfere with her enjoyment of her estate because she took preventative measures to keep the grass height low. Further, although Mr. Markel hired a company to maintain the vacant lot, he ended his maintenance

---

[7] At the close of Ms. Price's case-in-chief, Mr. Markel moved for an involuntary dismissal on the basis that Ms. Price had not proven any entitlement to relief on the basis that: (1) the reconventional demand did not allege a claim for reimbursement for mowing the vacant lot; and (2) there is no law to support such a claim. Mr. Markel did not raise as an assigned error the district court's denial of his motion for involuntary dismissal.

10

contract after he discovered that the grass was already being maintained by Ms. Price. Both parties testified that after they met, there was no conversation regarding compensation in exchange for Ms. Price mowing the vacant lot. In the years that followed, Ms. Price continued to maintain the vacant lot. In doing so, she enjoyed exclusive use of the lot. As to the August 1, 2022 text message between Ms. Price and Mr. Markel, it was only after Mr. Markel told Ms. Price to stop parking on the vacant lot, that she requested reimbursement of expenses for mowing the lawn. This occurred just prior to Mr. Markel filing his Petition in October 2022.

Applying the codal articles set forth above *in pari materia* to the facts of this case, we find that the record does not support the district court's judgment that Ms. Price maintained the servitude. The maintenance undertaken by Ms. Price did not include the narrow strip of land which encompassed the servitude on her property; instead, Ms. Price maintained the vacant lot. We further find that there was no written or oral contract between the parties, such that Ms. Price was to maintain the vacant lot on behalf of Mr. Markel in exchange for compensation. Notwithstanding, the evidence shows that Mr. Markel knew Ms. Price was mowing the vacant lot, he acquiesced to her mowing the lot, and he accepted the benefits of her maintaining the lot. As such, we conclude that Mr. Markel's actions amounted to a tacit ratification of an onerous contract with Ms. Price, wherein each party obtained an advantage in exchange for an obligation—Ms. Price mowed the vacant lot in exchange for Mr. Markel allowing her to use the vacant lot to her benefit. In other words, after five years of mowing the vacant lot and using the lot for her own benefit, Ms. Price is now estopped from seeking reimbursement for maintaining same. *See Bains*, 06-1423, p. 4, 969 So.2d at 649 (wherein this Court noted that "it

is not licit to enforce a right in contradiction to one's previous conduct, when that conduct, interpreted in good faith, would justify the conclusion that the right does not exist or will not be enforced") (citation omitted). This assignment of error has merit.

*Attorney's fees*

Mr. Markel asserts that the district court erred when it ordered him to pay attorney's fees and court costs in the amount of fifteen hundred dollars. We agree.

"It is axiomatic that 'attorneys' fees are not recoverable unless expressly authorized by statute or by a contract between the parties.'" *English Turn Prop. Owner's Ass'n, Inc. v. Short*, 16-0460, p. 17 (La. App. 4 Cir. 11/30/16), 204 So.3d 672, 684 (quoting *KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc.*, 11-0598, p. 11 (La. App. 4 Cir. 3/14/12), 89 So.3d 1207, 1213). "An award of attorneys' fees is left to the sound discretion of the trial court, which will not be reversed on appeal unless that discretion was clearly abused." *Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co., Inc.*, 15-1053, p. 13 (La. App. 4 Cir. 9/1/16), 200 So.3d 977, 986 (citing *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 11 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1220). "Where the standard of review is an abuse of discretion, the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact." *Id.* (quoting *Covington v. McNeese State Univ.*, 12-2182, p. 11 (La.5/7/13), 118 So.3d 343, 351). Because there is no applicable statute nor contract between the parties that entitled Ms. Price to an award for attorney's fees, we find that the district court erred in awarding attorney's fees as it did.

*Court order to maintain servitude and grass height*

In his final assignment of error, Mr. Markel avers that the district court erred by ordering him to maintain the servitude and grass on the vacant lot within two-and-a-half to three inches. First, we note that the predial servitude that burdened the double in favor of the vacant lot was extinguished through Mr. Markel's express and written renunciation and the January 30, 2023 judgment on the motion for summary judgment. As this Court espoused in *Plaquemines Par. Gov't v. Hinkley*:

> Article II, section 1 of the Louisiana Constitution establishes three (3) distinct branches of government: legislative, executive, and judicial. Section 2 of that article provides: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. art. II, § 2. Thus, "[t]his trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power which the legislative and executive branches cannot abridge." *Hoag v. State*, 04-0857, p. 4 (La. 12/1/04), 889 So.2d 1019, 1022. "Similarly the judicial branch may not usurp those powers which are vested in the other two branches." *Id.*

19-0929, pp. 5-6 (La. App. 4 Cir. 4/22/20), 364 So.3d 214, 218. Pursuant to the Home Rule Charter of the City of New Orleans, Sec. 3-101(1), "[a]ll legislative powers of the City shall be vested in the Council [for the City of New Orleans]." The most current version of the Code of Ordinances for the City of New Orleans, Sec. 66-312 (a), adopted Council for the City of New Orleans, provides in pertinent part that "neither grass nor weeds shall rise above the height of ten inches." The district court's order, which obligated Mr. Markel to maintain his grass within a range of two-and-a-half to three-inches, imposed a higher burden than the ten-inch height limit imposed by the Council's ordinance. Consequently, the district court usurped the legislative power vested in the Council and further

committed legal error by ordering Mr. Markel to maintain the grass within two-and-a-half to three inches.  This assignment of error has merit.

## DECREE

For the aforementioned reasons, the judgment of the district court is reversed.

**REVERSED**